UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHAOPING HUANG and <br> JIANI JIANG, <br><br> Plaintiffs, <br><br> v. <br><br> XUANXUAN WEI, <br> KELVIN KING LUN WU and <br> LAW OFFICE OF KING L. WU & ASSOCS., <br><br> Defendants. | Case No. 22-cv-11417-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                              September 20, 2023

## I.     Introduction

Plaintiffs Shaoping Huang and Jiani Jiang (collectively, "Plaintiffs") have sued Defendants Xuanxuan Wei ("Attorney Wei" or "Wei"), Kelvin King Lun Wu ("Attorney Wu" or "Wu") and the Law Office of King L. Wu & Associates ("Wu Firm"), alleging breach of contract (Count I), intentional misrepresentation (Count II), negligent misrepresentation (Count III), unfair and deceptive practices in violation of Mass. Gen. L. c. 93A (Count IV), legal malpractice (Count V), and unauthorized practice of law (Count VI).  D. 1.  Attorney Wu and the Wu Firm (collectively, "Wu Defendants") moved to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  D. 9.  Plaintiffs have now moved to amend the complaint to include an affidavit from Shaoping Huang ("Huang Affidavit").  D. 26.  The Court ALLOWS the motion to dismiss, D. 9, with respect to all claims and DENIES the motion to amend the complaint, D. 26.

1

## II.     Standard of Review

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

When ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a district court applies the *prima facie* standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citation omitted). "Under this standard, it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citation omitted). Plaintiffs must "go beyond the pleadings and make affirmative proof." Id. at 619 (citation omitted). This Court accepts Plaintiffs' "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [Plaintiffs'] jurisdictional claim." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citation omitted). But it will "not credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will also "consider facts offered by [the Wu Defendants], to the extent that they are not disputed." A Corp., 812 F.3d at 58 (citation omitted).

### B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To withstand a Rule 12(b)(6) challenge, a complaint must "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. (citation omitted). Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. (citation omitted). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657

F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### C. Motion to Amend Pursuant to Fed. R. Civ. P. 15(a)

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2); and then quoting Resol. Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). This "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 611 (2d ed. 1990)). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (alteration in original) (quoting Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993).

### III. Factual Background

The following facts are drawn from Plaintiffs' complaint and accompanying exhibits, D. 1, and the affidavits filed by Attorneys Wei and Wu in support of the Wu Defendants' motion to dismiss, D. 10-1 ("Wu Aff."); D. 10-2 ("Wei Aff.").

Plaintiffs Huang and Jiang are residents of Quincy, Massachusetts. D. 1 ¶¶ 26–27. Defendant Wei is a resident of Flushing, New York and an attorney licensed to practice in the state of New York. Id. ¶¶ 21, 28, 35; D. 1-3; Wei Aff. ¶ 1. Prior to January 27, 2022, Plaintiffs had

"asked Wei legal questions on various occasions, specifically regarding the corporate governance of a business sale in Massachusetts." D. 1 ¶ 46.

Plaintiffs allege that that "Wei is an attorney of King L. Wu Law Firm" and submit a printout of the Wu Firm's website with their complaint. Id. ¶ 37; D. 1-5. The Wu Firm is in Flushing, New York and was founded by Attorney Wu in 2017. D. 1 ¶ 40; Wu Aff. ¶ 2. Attorney Wu is a New York resident and the only partner of the Wu Firm. Wu Aff. ¶¶ 1–2. Wu has not "traveled to or visited Massachusetts," "practice[d] law in Massachusetts," or "represented clients in Massachusetts." Id. ¶ 3. "The Wu Firm has never practiced law or transacted business in Massachusetts." Id. ¶ 3. Wei was an associate at the Wu Firm from July 2018 to August 2020, but Defendants aver that she left the firm and began working as a solo practitioner in August 2020. Id. ¶ 4–5; Wei Aff. ¶¶ 2–4. The Wu Defendants do not dispute that the Wu Firm's website displayed Wei's name and photo under the heading "Our Lawyer" during the relevant period and until Plaintiffs filed the complaint on September 2, 2022. D. 1-5 at 3; D. 12 at 7; Wu Aff. ¶ 6 (averring that "[a]fter August 2020, Ms. Wei was inadvertently left on the Wu Firm's website"). Wu acknowledges that Wei "has performed some work on behalf of the Wu Firm on an ad hoc contract basis to assist with criminal cases." Wu Aff. ¶ 5; see Wei Aff. ¶ 4 (averring that "[s]ince August 2020, I performed some contract work for the Wu Firm on criminal cases").

In 2022, Wei assisted Plaintiffs in the purchase of BB Beauty Salon ("Business"), a business located in Massachusetts and owned by Xia Zhong ("Zhong"). D. 1 ¶¶ 5–12, 47–79. In July 2022, Plaintiffs sent a chapter 93A demand letter to Wei and the Wu Firm claiming that Wei was not authorized to practice in Massachusetts, that Wei failed to properly investigate the purchase of the Business, that the purchase of the Business was fraudulent, that Plaintiffs lost $170,000 as a result and that Plaintiffs would not have gone through with the purchase if Wei had

4

informed them of a pending lawsuit against Zhong. Id. ¶¶ 82–84. "In or about July 2022, [Wei] communicated to Plaintiffs' counsel that [she] was not an employee or associate of the Wu Firm during the relevant timeframe" and was working instead as a sole practitioner. Wei Aff. ¶ 7.

IV.    **Procedural History**

Plaintiffs filed this action on September 2, 2022, D. 1. The Wu Defendants then moved to dismiss the complaint. D. 9. The Court heard the parties on that motion and took the matter under advisement. D. 24. Plaintiffs subsequently moved to amend the complaint. D. 26.

V.    **Discussion**

A.    **Motion to Dismiss For Lack of Personal Jurisdiction**

To exercise jurisdiction over the non-resident Wu Defendants, this Court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (citations omitted). The parties agree that general jurisdiction does not apply here, so the Court focuses its analysis on the Massachusetts long-arm statute, Mass. Gen. L. c. 223A, and the three-prong inquiry for specific jurisdiction, see Astro–Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (citations omitted). Since Plaintiffs do not point to any evidence of Wu Defendants' presence in Massachusetts apart from allegations about Wei's conduct as the Wu Defendants' alleged "agent," D. 12 at 3–6, the Court turns first to the imputation of Wei's contacts with the forum state.

1.    *Imputed Contacts*

"For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002). The "essential question here is whether the relationship between [Wei and the Wu Defendants], however it is labeled, is sufficient to attribute [Wei's] in-state contacts with the [Wu

5

Defendants] to exercise jurisdiction that comports with due process." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 240 (D. Mass. 2012) (citation omitted); see Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7–8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 56–57) (recognizing that "[t]he exact type of agency relationship used to impute contacts is not crucial to our inquiry regarding traditional notions of fair play and substantial justice, nor are the technical differences between the states' different rules of agency vital"). To answer this question, the Court examines: (1) whether Wei was in an actual or apparent agency relationship with the Wu Defendants and (2) whether the Wu Defendants ratified Wei's conduct. Weinberg, 891 F. Supp. 2d at 240 (citing Daynard, 290 F.3d at 53–54).

a)     Agency Relationship

"An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000) (citation omitted). Plaintiffs' only evidence suggesting that Wei acted on the Wu Defendants' behalf or subject to their control is the continued presence of Wei's name on the Wu Firm's website. D. 12 at 5–6. The affidavits submitted by the Wu Defendants, however, remain uncontroverted and show that Wei was not an employee or associate of the Wu Firm when she provided legal services to Plaintiffs in 2022 and that Wei never represented the same to Plaintiffs. Wu Aff. ¶¶ 4–5, 7, 9; Wei Aff. ¶¶ 3–6. The Court cannot infer the existence of an agency relationship between the Wu Defendants and Wei on this record.

b)     Actual or Apparent Authority

Even assuming *arguendo* that an agent-principal relationship existed, "the principal has liability for the agent's acts toward third parties only if the agent was acting with the actual or apparent authority of the principal in that transaction." Theos, 431 Mass. at 743 (citing

6

Restatement (Second) of Agency §§ 7, 8 (1958)).  This Court does not have jurisdiction over a nonresident defendant whenever the defendant's agent conducts business or causes injury in Massachusetts.  Sun Life Assur. Co. of Can. v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 189 (D. Mass. 2012) (declining to impute contacts of transfer agent to principal-defendants for purposes of personal jurisdiction under the long-arm statute, because transfer agent's Massachusetts office did not "generate 'substantial revenue' on behalf of defendants, rather than any of its other clients").  "Instead, the scope of the alleged agency relationship is limited to the transactions by the . . . agent on behalf of the defendants." Id.  Here, Plaintiffs must show that Wei's contact with Massachusetts was within the scope of her actual or apparent authority to act on the Wu Defendants' behalf.

"Actual authority results when the principal explicitly manifests consent, either through words or conduct, that the agent should act on behalf of the principal."  Theos, 431 Mass. at 743 n.13 (citations omitted).  Plaintiffs have offered no evidence that the Wu Defendants consented to Wei's provision of legal services to Plaintiffs.  Wu attests that the Wu Defendants did not "practice law in Massachusetts" or "represent[] clients in Massachusetts," that the Wu Firm "has no records of Plaintiffs" and that Wei "represented Plaintiffs as an individual attorney."  Wu Aff. ¶¶ 3, 8–9. Plaintiffs have not pled the existence of actual authority for Wei to act on the Wu Defendant's behalf.  See Jet Wine, 298 F.3d at 9–10 (imputing contacts where letter terminating plaintiff's distributorship agreement identified in-state defendant as out-of-state defendant's "exclusive brand agent and distributor"); Giving Back Fund, Inc. v. Steverson, No. 02-cv-10446, 2002 WL 1586994, at *2 (D. Mass. July 12, 2002) (holding that court had personal jurisdiction over firm where it had "personal jurisdiction over [firm attorneys], with respect to acts they performed *for clients of [firm]*) (emphasis added)).

"Apparent authority exists only if the plaintiff reasonably relied on the principal's words or conduct at the time [the plaintiff] entered the transaction that the agent is authorized to act on the principal's behalf." Theos, 431 Mass. at 745 (citation omitted). Plaintiffs have not alleged any contact with the Wu Defendants. In fact, Wei attests that she "never held [her]self out as an employee or associate of the Wu Firm to the Plaintiffs." Wei Aff. ¶ 6. Wei's appearance on the Wu Firm website under the heading "Our Lawyer" almost two years after Wei ceased to be an associate also does not satisfy Plaintiffs' burden to show apparent authority.

Even as alleged, facts in the complaint show that Plaintiffs viewed Wei, rather than the Wu Defendants, as their attorney. See D. 1 ¶ 5 (alleging that "Wei represented the Plaintiffs and their originally formed business"), id. ¶ 19 (alleging that "Wei charged the Plaintiffs $1,000 to review the sale and the aforementioned three documents"). Plaintiffs do not allege that either Wei or the Wu Defendants held themselves out as affiliated in any dealings with Plaintiffs. Stacy v. Johnson, No. 07-cv-51-SM, 2007 WL 2480341, at *5 (D.N.H. Aug. 28, 2007) (distinguishing Johnson v. Shaines & McEachern, P.A., 835 F. Supp. 685, 690 (D.N.H. 1993) where nothing suggested that attorneys held themselves out as partners or that plaintiffs reasonably relied upon same); see TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d 195, 208 (D. Mass. 2019) (declining to impute contacts to alleged principal where plaintiff did not learn that principal and agent were working together until deal fell through).

On this record, the Plaintiffs have not made a *prima facie* showing that Wei acted with the Wu Defendants' actual or apparent authority. See Daynard, 290 F.3d at 59 (imputing contacts where plaintiff "reasonably understood" law firm partner was "acting on behalf of joint venture or other agency relationship" and "relied on this understanding by providing his services to both defendants"); Com. Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622, 626 (1962) (holding

that no apparent authority existed where alleged agent did not "profess[] to be acting as an agent in the sale of the car" and buyer did not believe that alleged agent "was other than the owner").

     c)  Ratification

Even if Wei lacked actual and apparent authority, the Court could still impute her contacts to the Wu Defendants if the Wu Defendants subsequently ratified those contacts. Daynard, 290 F.3d at 59. Two relevant limitations exist on a principal's ability to ratify conduct. First, the principal must generally "have full knowledge of all material facts." Weinberg, 891 F. Supp. 2d at 242 (D. Mass. 2012) (citation omitted). Full knowledge, however, is not required where "a party 'purposely shut[s] his eyes to means of information within his own possession and control.'" Id. (alteration in original) (quoting Inn Foods, Inc. v. Equitable Coop. Bank, 45 F.3d 594, 597 (1st Cir.1995)). Second, "[r]atification is limited to the adoption of an act purporting to be done, or in fact done, on behalf of the principal." Shapiro v. Am. Home Assur. Co., 584 F. Supp. 1245, 1251 (D. Mass. 1984) (quoting Allen v. Liston Lumber Co., 281 Mass. 440, 446 (1933)). "If the agent did not intend to act as agent, there is no agency and there can be no ratification of the act of one not acting as an agent." Id. at 1251–52 (quoting Allen, 281 Mass. at 446).

Here, imputation of contacts under a ratification theory is improper, because Plaintiffs present no evidence that the Wu Defendants "knowingly accepted the benefits of a transaction initiated in Massachusetts." Weinberg, 891 F. Supp. 2d at 243 (citing Daynard, 290 F.3d at 60). Plaintiffs argue that the Wu Defendants "shut their eyes" to information within their possession and control and "reasonably should have been aware of deviations in Wei's work in jurisdictions she was not licensed to practice in, particularly because they continued to utilize her services and represent her as an attorney for them." D. 12 at 6. But nothing in the record shows that the Wu Defendants had reason to know of Wei's interactions with Plaintiffs between January and June 2022. Plaintiffs provide no evidence that Wei ever sought Wu's input regarding Plaintiffs' matter,

9

or that Plaintiffs interacted with the Wu Firm prior to July 2022. In their opposition, Plaintiffs insist that "it is highly plausible the Wu Defendants possess records on Wei's services after August 2020, including potentially the Plaintiffs." Id. at 9. The Court cannot draw this inference from the uncontroverted record that Attorney Wu searched the firm's "client and accounting records" and determined that the "Wu Firm has no records of Plaintiffs." Wu Aff. ¶ 8. Moreover, Plaintiffs do not allege that the Wu Defendants invoiced Plaintiffs or otherwise communicated with Plaintiffs in a manner that would generate client or accounting records.

The Court has also considered Plaintiffs' argument that the Wu Defendants became aware of Wei's representation of Plaintiffs from the chapter 93A demand letter in July 2022, but failed to disavow those actions until this lawsuit was filed. See D. 12 at 6. But the Wu Defendants had no duty to disavow acts that were not performed in their name. See Shapiro, 584 F. Supp. at 1252 (concluding that officers and directors did not ratify misrepresentations in insurance application by former president because "[r]atification does not create an agency where none existed, but instead can be used to make a principal responsible for unauthorized acts performed by one who was in fact acting as an agent"). The uncontroverted record is that Wei never held herself out to Plaintiffs as affiliated with the Wu Defendants. Wu Aff. ¶ 9; Wei Aff. ¶ 6. Nor have Plaintiffs shown Wei intended to act on the Wu Defendants' behalf when representing Plaintiffs. Under such circumstances, the Wu Defendants could not ratify Wei's conduct. See Com. Credit Corp., 343 Mass. at 628 (concluding that plaintiff did not ratify sale by accepting part payment because alleged agent "neither acted nor purported to act on behalf of a principal" when alleged agent sold plaintiff's car without permission).

Plaintiffs have not shown that Wei's alleged conduct in the forum fell within the scope of any principal-agent relationship with the Wu Defendants. Accordingly, the Court does not impute Wei's contacts to the Wu Defendants.[2]

### 2. *Massachusetts Long-Arm Statute*

Plaintiffs assert that jurisdiction is proper under Section 3(c) of the Massachusetts long-arm statute, which grants the Court "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth." Mass. Gen. L. c. 223A, § 3; D. 12 at 3. "[W]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." The Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 320 (D. Mass. 2008) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)) (addressing § 3(c) of the Massachusetts long-arm statute). To determine whether the injury rose from that act, the Court must ask whether "defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Lin v. TipRanks, Ltd., No. 19-cv-11517-ADB, 2019 WL 6211246, at *2 (D. Mass. Nov. 21, 2019), aff'd, 19 F.4th 28 (1st Cir. 2021) (alteration in original) (citation omitted).

As explained above, Wei did not provide legal services to Plaintiffs on the Wu Defendants' behalf and the Court will not impute her contacts with Plaintiffs in Massachusetts to the Wu

---

[2] Regarding Plaintiffs' counsel's request for jurisdictional discovery into the date of Wei's departure from the Wu Firm, the Court concludes that such discovery is not necessary. See Swiss Am. Bank, 274 F.3d at 625–26 (recognizing that such decision is committed to a court's discretion as "the district court still has 'broad discretion to decide whether discovery is required'"). Even as alleged, there is no suggestion that Wei's representation of Plaintiffs was undertaken on the Wu Defendants' behalf.

11

Defendants. The Wu Defendants have never physically visited Massachusetts or represented clients in Massachusetts. See Wu Aff. ¶ 3. Even assuming that Wei's continued presence on the firm website is an act within Massachusetts, it does not follow that Plaintiffs' losses arose from that act. Cf. Lin, 2019 WL 6211246, at *3 (determining that arising-from clause was satisfied because defamatory material "allegedly accessed in Massachusetts is a but-for cause of the injury"). Accordingly, the Massachusetts long-arm statute does not provide jurisdiction.

        3.      *Due Process*

Although Plaintiffs' failure to meet the requirements of the long-arm statute is fatal to their showing of personal jurisdiction, the Court will examine the constitutional question for specific jurisdiction in the interest of completeness. LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro–Med, 591 F.3d at 9 (citations omitted). The Court must determine that all three are present to assert personal jurisdiction over a defendant.

To determine relatedness, the Court considers whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Id. (alternations in original) (citations omitted). It is a "flexible, relaxed standard." Id. (citation omitted). However "the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (alternation in original) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). The Wu Defendants did not retain sufficient "control" over Wei's Massachusetts activities for Wei's affiliation with the firm "to support [the Wu Defendants'] relationship to the forum state." See TargetSmart, 366 F. Supp. 3d at 211. Plaintiffs have not met their burden to show the Wu Defendants' limited Massachusetts contacts are related to the Plaintiffs' claims.

A defendant must also "purposefully avail[] itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  The defendant's contacts must be voluntary rather than "based on the unilateral actions of another party."  Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007).  Plaintiffs have not shown that Wei's provision of legal services in Massachusetts was anything other than unilateral activity outside the scope of her work for the Wu Defendants.  Weinberg, 891 F. Supp. 2d at 246 (holding that foreign defendants did not purposefully avail themselves of Massachusetts where tour operator independently sought out Massachusetts travel agents).  The Wu Firm website was accessible from Massachusetts, but only passively offers information about the firm.  A Corp., 812 F.3d at 61 (holding that "mere availability of a passive website . . . cannot, standing alone" satisfy purposeful availment).  Plaintiffs have not shown that the Wu Defendants purposefully availed themselves of the privilege of operating in Massachusetts.

To establish this Court's specific jurisdiction over the Wu Defendants, the Plaintiffs also need to show that the exercise of jurisdiction is reasonable in light of the five Gestalt factors:  "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id. (alteration in original) (citation omitted).  These factors "play a larger role in close cases."  Id.; see Sawtelle, 70 F.3d at 1394 (citation omitted) (recognizing that reasonableness factors "come into play only if the first two segments of the test for specific jurisdiction have been fulfilled").  Here, the Court perceives no "special or unusual" burden for the Wu Defendants to appear in Massachusetts beyond the usual inconvenience of litigating in another forum.  Sawtelle, 70 F.3d at 1395.

13

Massachusetts has an interest in protecting its citizens from legal malpractice by nonresident attorneys, but the Wu Defendants did not represent Massachusetts clients. See id. Plaintiffs' choice to litigate in their home forum must also be accorded some deference. Id. The remaining factors do not strongly counsel the Court in either direction. Nor can the reasonableness factors overcome the absence of relatedness and purposeful availment. A Corp., 812 F.3d at 61–62.

Accordingly, the Court concludes that jurisdiction over the Wu Defendants does not comport with the Due Process Clause.[3]

### B.      Motion to Amend Complaint

Over two months after oral argument on the motion to dismiss, Plaintiffs moved to amend their complaint to include the affidavit of Shaoping Huang. D. 26. Even taking the Huang Affidavit into consideration, the only act that Huang attests to by the Wu Defendants that might bear upon their apparent authority over Wei is his viewing of Wei's name on their passive website that could be viewed from any jurisdiction. D. 26-1 ¶¶ 13–17. As suggested above, the Wu Firm website alone does not create such "extensive interactions" between Wei and the Wu Defendants as would "warrant jurisdictional attribution." Weinberg, 891 F. Supp. 2d at 244 n.8 (distinguishing Meyersiek v. Richard, No. CA 06-335 T, 2008 WL 3306647 at *11-12 (D.R.I. May 30, 2008) and concluding that Massachusetts defendant's contacts with forum could not be attributed to foreign defendants); D. 28 at 4-6. Nor does the Huang Affidavit indicate that Wei ever represented to Plaintiffs that the resources of the Wu Firm would be at Plaintiffs' disposal. Cf. Johnson, 835 F. Supp. at 687 (denying motion to dismiss complaint which alleged that lawyer "specifically advised" client of merger with in-forum law firm and informed client that the legal resources of

---

[3] Having determined that it lacks personal jurisdiction over the Wu Defendants, the Court need not decide whether the complaint states a claim as to the Wu Defendants' liability for Wei's conduct.

in-forum law firm would be available to lawyer while representing client). Accordingly, the Court concludes that the Huang Affidavit would not remedy Plaintiffs' failure to establish personal jurisdiction and denies the motion to amend as futile.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the Wu Defendants' motion to dismiss the complaint, D. 9, and denies Plaintiffs' motion to amend the complaint, D. 26.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge